IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


ST. PAUL MERCURY INSURANCE )
COMPANY, )
 )
 Plaintiff, )
 )
 v. ) No. 04 C 3534
 )
COMMERCIAL PROPERTY ASSOCIATES, )
INC. and JEROLD S. RAWSON, )
 )
 Defendants. )
 )
 )
JEROLD S. RAWSON, )
 )
 Counterclaimant, )
 )
 v. )
 )
ST. PAUL MERCURY INSURANCE )
COMPANY, )
 )
 Counterdefendant. )


## MEMORANDUM OPINION AND ORDER


Plaintiff St. Paul Mercury Insurance Company seeks a declaratory judgment that it has no duty to defend or indemnify under a policy of insurance issued to defendant Commercial Property Associates, Inc. Also named as a defendant in the declaratory action is Jerold Rawson. Rawson brought suit against Commercial Property in the Circuit Court of Cook

County, Illinois. Rawson, in the state court putative class action, alleges that Commercial Property improperly faxed him an unsolicited advertisement. Rawson alleges this conduct constitutes a violation of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; common law conversion;[1] a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2; and property damage caused by a violation of an Illinois criminal statute prohibiting unsolicited fax advertisements, 720 ILCS 5/26-3. In the federal declaratory judgment action, St. Paul seeks a declaration that it has no duty to defend the state lawsuit nor indemnify any damages resulting therefrom. No judgment has been reached in the underlying action. Also, the underlying action has been assigned to one judge who is coordinating more than 50 cases that involve TCPA claims.[2]

St. Paul relies on diversity jurisdiction. There is no dispute that there is complete diversity of citizenship. Rawson and Commercial Property,[3] however, contend that the jurisdictional

---

[1]The conversion is based on appropriating Rawson's ink and paper used to print the fax.

[2]In his reply, Rawson indicates there are now more than 100 coordinated TCPA cases.

[3]Commercial Property has joined in the motion and supporting briefs filed by Rawson.

amount requirement is not met.[4] St. Paul alleges in the First Amended Complaint and contends in its response to the motion to dismiss that the amount in controversy exceeds $75,000. A plaintiff's good faith evaluation of the stakes controls unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289 (1938); The Barbers, Hairstyling for Men & Women, Inc. v. Bishop, 132 F.3d 1203, 1205 (7th Cir. 1997). However, when the amount in controversy is contested, a plaintiff must support its assertion with competent proof, i.e., proof to a reasonable probability that jurisdiction exists. Rexford Rand Corp. v. Ancel, 58 F.3d 1215, 1218 (7th Cir. 1995); NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 237 (7th Cir.), cert. denied, 515 U.S. 1104 (1995). See also American Bankers Life Assurance Co. of Florida v. Evans, 319 F.3d 907, 909 (7th Cir. 2003). Additionally, the amount in controversy is to be determined as of the date the lawsuit was filed; it is not affected by subsequent events. Grinnell Mutual Reinsurance Co. v. Shierk, 121 F.3d 1114, 1116 (7th Cir. 1997).

Defendants raise two issues. First, they contend that a declaratory action as to indemnity is premature and therefore the

---

[4]Rawson also moves to withdraw its answer and counterclaim. That is not a prerequisite to moving to dismiss for lack of subject matter jurisdiction. The motion to withdraw will be denied without prejudice.

only ripe claim properly before the court is one for a declaration as to St. Paul's duty to defend. They further contend that this means only the costs of defense can be considered in determining the amount in controversy and not any damages amount that plaintiff might ultimately be required to indemnify. Second, defendants contend that potential defense costs will be significantly reduced because of the cost effectiveness of the TCPA cases being coordinated in the Circuit Court. In any event, defendants contend that St. Paul has not made a sufficient showing as to the potential defense costs.

Defendants contend any claim based on indemnification is premature and therefore unripe because no judgment has yet been entered in the underlying action. Plaintiff, however, contends that Illinois law only treats such indemnity claims as premature if resolution of the indemnity issue could have a preclusive effect in the underlying action. Plaintiff, though, cites no Illinois case that has reached such a holding. But whether that is the rule in Illinois courts is irrelevant because federal constitutional law, not state law, controls as to whether the federal jurisdictional requirement of ripeness is satisfied. Lear Corp. v. Johnson Electric Holdings Ltd., 353 F.3d 580, 583 (7th Cir. 2003). In the Seventh Circuit, an insurer's request for a declaration regarding its duty to indemnify will not be found to be ripe prior to a judgment that its insured is liable

unless there is some other sufficient indication that the insurer is certain or nearly certain to have an indemnity liability if coverage exists. See id.; Consolidated City of Indianapolis v. Ace Insurance Co. of North America, 2004 WL 2538648 *2-3 (S.D. Ind. Sept. 20, 2004); American Economy Insurance Co. v. T.J. Copy Products, Inc., 2004 WL 842510 *1-2 (N.D. Ill. April 20, 2004). Therefore, the issue before the court is whether the requested declaration regarding defendant's duty to defend is a controversy potentially valued at more than $75,000.

Two recent cases from this court have held that, as to a declaratory judgment involving a duty to defend under an insurance policy, the value of the claim is limited to potential costs of defense; potential damages in the underlying lawsuit should not be considered. T.J. Copy, 2004 WL 842510 at *1 (quoting Ohio Casualty Insurance Co. v. Lower Forty Gardens, Inc., 2003 WL 22849142 *1 (N.D. Ill. Dec. 1, 2003)); American Economy Insurance Co. v. Wholesale Life Insurance Brokerage, Inc., 2004 U.S. Dist. LEXIS 18519 *8 (N.D. Ill. Sept. 13, 2004).[5] Plaintiff contends that, even if the indemnity declaration is not

---

[5]None of the purportedly contrary district court cases cited by plaintiff are on point. None of the cases cited by plaintiff involve situations in which the district court was only exercising jurisdiction over a duty to defend claim. Instead, each case cited involves both duty to defend and duty to indemnify claims or the case involves only a duty to indemnify claim.

ripe, the duty of defense declaration should still be valued based on potential damages because a declaration that there is no duty to defend will also be conclusive as to any duty to indemnify. Plaintiff cites Shierk, 121 F.3d at 1116-17, in support of this proposition. Shierk, however, is distinguishable for two reasons. First, Shierk does not specifically consider this issue. Shierk simply assumes that the potential indemnity amount was part of the amount in controversy, the disputed jurisdictional issue in the case being whether the indemnity amount to consider was the potential damages that could be awarded in the underlying suit or the amount of damages actually awarded, the underlying verdict having been entered while the federal declaratory judgment action was pending. See id. at 1117. Unaddressed jurisdictional issues have no precedential value. Lewis v. Casey, 518 U.S. 343, 352 n.2 (1996). Second, Shierk is distinguishable on its facts. In Shierk, at the time the federal declaratory judgment action was filed, there had already been a finding of liability in the underlying action with damages still to be tried. Shierk, 121 F.3d at 1115. Thus, unlike the present case, in Shierk the indemnity claim apparently was ripe for adjudication because the insured was certain to have a liability in the underlying action. Cf. Bankers Trust Co. v. Old Republic Insurance Co., 959 F.2d 677, 680-81 (7th Cir. 1992).

The duty to defend and the duty to indemnify are distinct. The duty to defend goes only to the issue of providing a defense for the insured. The duty to indemnify goes to the issue of paying any liability incurred by the insured. A duty to defend claim does not directly resolve the issue of an insurer's obligation to pay any damages that might be awarded against the insured. St. Paul contends that, based on the issues in the present case, a declaration that it has no duty to defend would likely have an estoppel effect regarding any liability for possible damages in the underlying action. That may or may not be true. See Grinnell Mutual Reinsurance Co. v. Reinke, 43 F.3d 1152, 1154 (7th Cir. 1995). In any event, however, a possible estoppel effect regarding future liabilities is not taken into account in determining the amount in controversy. Dardovitch v. Haltzman, 190 F.3d 125, 135 (3d Cir. 1999) (quoting Aetna Casualty & Surety Co. v. Flowers, 330 U.S. 464, 467 (1947)). In the present situation, the amount in controversy is limited to considering the potential costs of defense.

Plaintiff contends that, in the underlying action, the potential costs of defense exceed $75,000. Plaintiff provides the affidavit of its in-house attorney (James Zacharski) responsible for handling Commercial Property's claim regarding the underlying action. Zacharski states that the costs of defense "in defending any given TCPA class action could

- 7 -

reasonably be expected to, and in fact were almost certain to, exceed $75,000, especially where the defendant was alleged to have sent tens of thousands of faxes, and especially where the suit was pending in a large metropolitan area such as Chicago, where attorneys' hourly rates tend to be higher than the national average." Zacharski Aff. ¶ 3. After reciting various issues that could be litigated in a TCPA case, Zacharski concludes: "In short, I do not believe, and did not believe in May 2004, that Judge McGann's coordinated handling of these cases was certain to reduce significantly the cost of defending any given TCPA class action. Even if some cost reductions were realized, they would likely not have reduced the reasonably probable costs of defending any given TCPA class action to less than $75,000." Id. ¶ 8.

While Zacharski recites a few specific facts about the underlying action itself, his affidavit is couched in generalities about TCPA litigation. He never actually states that he expects the costs of the underlying action itself to exceed $75,000. He does note that Commercial Property has retained its own attorneys under St. Paul's reservation of right, but he does not provide specific information about those attorneys. Zacharski does not provide any information about the hourly rate actually charged by those attorneys nor does he note whether those same attorneys are also representing any defendants

in any of the coordinated cases. If the costs of those attorneys for joint responses and actions are being shared by other defendants, Commercial Property's defense costs would be significantly reduced. Zacharski also makes no attempt to estimate the actual hours charged or to be charged by these attorneys. Plaintiff notes that all briefing of legal issues has been done in the lead TCPA case and was completed prior to the filing of the underlying action. Even assuming Commercial Property's defense counsel is not spreading expenses among various TCPA cases, it does not take substantial time to read briefs filed by others, file a one-page document joining in the lead motions (as Commercial Property did in moving to dismiss the underlying action), and keep adequately abreast of the coordinated proceedings. As Rawson notes, his own counsel's fees are still less than $20,000. It is also noteworthy that Commercial Property--which is represented by the same counsel both here and in the underlying litigation--agrees with Rawson that defense costs are likely to be $75,000 or less, as indicated by Commercial Property's joinder in Rawson's motion to dismiss.

The burden is on plaintiff to provide competent proof, i.e., proof to a reasonable probability that jurisdiction exists. Rexford, 58 F.3d at 1218; NLFC, 45 F.3d at 237; American Bankers, 319 F.3d at 909. For the reasons discussed above, the affidavit of Zacharski is insufficient to meet that burden. Plaintiff has

not made a sufficient showing that the costs of defense in the underlying action, and therefore the value of the declaratory action, are likely to be more than $75,000. Plaintiff's claim will be dismissed without prejudice for lack of subject matter jurisdiction.

Rawson has counterclaimed, also seeking a declaratory judgment as to St. Paul's duty to defend and indemnify. Even assuming Rawson has standing to bring such a claim, the amount in controversy requirement would not be satisfied for the same reasons it was not satisfied regarding St. Paul's claims. In any event, Rawson has indicated a desire to withdraw the counterclaim. The counterclaim will also be dismissed without prejudice.

IT IS THEREFORE ORDERED that defendant Rawson's motion to withdraw answer and counterclaim [15] is denied without prejudice. Defendants' motion to dismiss [19] is granted. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiff dismissing plaintiff's cause of action without prejudice for lack of subject matter jurisdiction. The Clerk of the Court is further directed to enter judgment in favor of counterdefendant and against counterclaimant dismissing counterclaimant's cause of action without prejudice for lack of

subject matter jurisdiction.  Defendants are awarded their reasonable costs.

        ENTER:

        *William T. Hart*
        UNITED STATES DISTRICT JUDGE

DATED: MAY 10, 2005